# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDEL C. RIVERA III,<br><br>          Plaintiff,<br>v.<br>ATTORNEY GENERAL MERRICK B. GARLAND, et al.,<br><br>          Defendants. | Case No.: 21-cv-213-MMA (AGS)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY, FOR JUDGMENT**<br><br>[Doc. No. 4] |

On February 3, 2021, Plaintiff Fidel C. Rivera III ("Plaintiff") filed a Complaint against Department of Justice Attorney General Monty Wilkinson and Does 1 through 10.[1]  *See* Doc. No. 1 ("Compl.").  Plaintiff brings claims for discrimination, hostile work environment, and retaliation pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*  Defendant moves to dismiss, or alternatively, for partial summary judgment.  *See* Doc. No. 4.  Plaintiff filed an opposition, to which Defendant replied.  *See*

---

[1] Merrick B. Garland replaced Monty Wilkinson as Attorney General.  Therefore, he is automatically substituted as Defendant.  *See* Fed. R. Civ. P. 25(d).  Hereafter, all references to "Defendant" are to Attorney General Garland.

Doc. Nos. 5, 6. The Court found the matter suitable for disposition on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 7. For the reasons set forth below, the Court **DENIES** Defendant's motion.

# I. BACKGROUND

Plaintiff is employed by the United States Department of Justice, Bureau of Prisons ("BOP"). *See* Compl. at ¶ 5. In October 2016, the BOP assigned Plaintiff to MCC San Diego ("MCC") as a Cook Supervisor. *See id.*

## A. General and Continuing Discrimination Allegations

Plaintiff is Puerto Rican. *See, e.g., id.* at ¶ 14. According to Plaintiff, his troubles at MCC began on his first day of the assignment. *See id.* at ¶ 10. Plaintiff claims that several persons at MCC—namely, his supervisor, Food Service Administrator Kevin Costa and a fellow employee, Jesus Rico—harassed and discriminated against him because of his Puerto Rican national origin. *See, e.g., id.* at ¶¶ 10–11. Plaintiff asserts that Mr. Costa and Mr. Rico often berated him, making "derogatory and aggressive statements to him regarding the fact he is Puerto Rican not Mexican . . . ." *Id.* at ¶ 44; *See also id.* at ¶¶ 17, 25, 35.

Plaintiff further alleges that Mr. Rico's harassment included criticizing Plaintiff's cooking, turning inmates against him, and coercing inmates to avoid eating food Plaintiff prepared. *See id.* at ¶ 13. In January 2017, Plaintiff asserts he reported Mr. Rico's conduct to Mr. Costa, but that Mr. Costa disregarded his complaints. *See id.* at ¶ 12. Plaintiff claims that the two embarked on a campaign to get him fired. *See id.* at ¶ 44.

## B. Negative Write-Ups

Among other things, their campaign allegedly led to Plaintiff receiving three negative write-ups. The first was the result of Plaintiff's use of potentially spoiled food, which he claims he did at Mr. Costa's direction. *See id.* at ¶ 15. Plaintiff received his second write-up after members of the department complained that he had been aggressive towards them, which Plaintiff disputes. *See id.* at ¶ 18. Mr. Costa wrote up Plaintiff a

third time, alleging that Plaintiff had used unauthorized food preparation techniques. *See id.* at ¶ 19. Plaintiff asserts that all three write-ups were reviewed by the Warden and ultimately terminated as false. *See id.* at ¶ 20.

## C. Letters of Reprimand

In June 2017, Plaintiff and Mr. Rico were involved in a physical incident. *See id.* at ¶ 22. Plaintiff reported the incident to Mr. Costa and thereafter to Associate Warden of Operation Garcia after "Mr. Costa failed to take corrective action." *Id.* at ¶ 22. The Workplace Violence Committee reviewed the incident and ultimately determined that Plaintiff was at fault and proposed a three-day suspension. *See id.* at ¶ 23. During the Committee's June 26, 2017 interview, Plaintiff expressed "that the behavior was beyond disagreements and was in violation of the anti-harassment policy" and requested that Mr. Rico be reassigned. *Id.* at ¶ 24. The suspension was instead downgraded to a letter of reprimand. *See id.* at ¶ 23.

Plaintiff's second letter of reprimand relates to Mr. Rico's alleged attempts to turn the inmates against him. According to Plaintiff, Mr. Rico encouraged inmates that are members of a Mexican gang to boycott working with Plaintiff on his "PM Food Service Inmate Detail" shift. *Id.* at ¶¶ 35, 37. As a result, Plaintiff filed a continuing harassment complaint with MCC. *See id.* at ¶ 37. Plaintiff asserts that a case was opened but that Mr. Garcia and Joey Hendrickson[2] determined that "Mr. Rico had not committed any misconduct." *Id.* at ¶ 38. When Plaintiff questioned this, he was issued a cease-and-desist letter as well as a second letter of reprimand. *See id.* at ¶ 41.

## C. Involuntary Reassignments

On January 21, 2018, Plaintiff sustained a work-related injury, limiting the use of one of his hands and requiring six weeks to heal. *See id.* at ¶ 30. Plaintiff's claim was accepted by the Department of Labor, *see id.*, and Mr. Hendrickson placed Plaintiff on

---

[2] According to Plaintiff, Mr. Hendrickson became the Safety Manager and acting Food Service Administrator after Mr. Costa retired. *See* Compl. at ¶ 31.

1  "Temporary Light Duty Assignment," *id.* at ¶ 31.  After only one week, however,
2  Mr. Hendrickson allegedly reassigned Plaintiff back to his regular duties.  *See id.*
3  Plaintiff believed that his injury restricted him from returning to his regular assignment
4  and brought this to Mr. Hendrickson's attention.  *See id.*  According to Plaintiff,
5  Mr. Hendrickson threatened that if he refused the reassignment, he would not be paid.  *Id.*
6  at ¶ 32.
7      Plaintiff asserts that Mr. Hendrickson ultimately corrected the reassignment,
8  placing Plaintiff back on light duty, after the Department of Labor informed him that it
9  violated Plaintiff's restrictions.  *Id.* at ¶ 33.  Despite returning Plaintiff to light duty,
10 however, Mr. Hendrickson allegedly reassigned Plaintiff a second time by changing his
11 shift.  *See id.* at ¶ 34.  Plaintiff claims that Mr. Hendrickson demanded he report to work
12 that same day for a 2:00 p.m. to 10:00 p.m. shift.  *Id.*  Plaintiff further alleges that
13 Mr. Hendrickson provided no explanation for the last-minute change and instead stated
14 "this is what you have, take it or leave it."  *Id.*

15 **D.     EEOC Complaint and Sensitive Documents**

16      On July 8, 2017—shortly after the incident between himself and Mr. Rico—
17 Plaintiff filed a report with the Equal Employment Opportunity Commission ("EEOC")
18 against MCC for failure to follow the BOP's anti-harassment policy.  *See id.* at ¶ 26.  Joe
19 Bautista was the regional EEOC counselor.  *See id.*

20      The exact timeline of events involving the EEOC is unclear.  For example, Plaintiff
21 asserts that in January 2018, Mr. Bautista informed Plaintiff that he and Mr. Rico had
22 been separated.  *See id.* at ¶ 29.  This, however, was apparently untrue, as the two were
23 still working together.  *See id.*  Nonetheless, Plaintiff asserts that on September 25, 2018,
24 he filed a formal EEOC Complaint.  *See id.* at ¶ 43; *see also id.* at ¶ 4.

25      Roughly one month later, Plaintiff discovered sensitive documents on an MCC
26 computer relating to him and his EEOC complaint.  *See id.*  Plaintiff claims that the
27 "private documents were easily accessible and [ ] fears that others may be able to access
28 his private information."  *Id.*

According to Plaintiff, the EEOC completed an investigation and detailed its findings in an April 11, 2019 report. *See id.* at ¶ 4. Plaintiff received a Final Agency Decision on November 5, 2019. *See id.*

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## III. Discussion

Defendant moves to dismiss "(1) Plaintiff's involuntary reassignment claims; and (2) Plaintiff's 'sensitive documents' claim." Doc. No. 4 at 9. As an initial matter, neither Plaintiff's involuntary reassignments nor his sensitive documents assertions are independent claims subject to dismissal. They are factual allegations of adverse actions in support of his three Title VII claims: (1) discrimination–disparate treatment; (2) harassment–hostile work environment; and (3) retaliation. The Court thus addresses Defendant's arguments within this framework.

First, Defendant attacks the Court's subject matter jurisdiction. He seeks dismissal under Rule 12(b)(1), or alternatively, judgment under Rule 56, of all three causes of action, asserting that Plaintiff has not exhausted his administrative remedies relating to the involuntary reassignment allegation. *See* Doc. No. 4 at 9. However, Defendant has since abandoned this argument. *See* Doc. No. 6 at 2. Accordingly, the Court **DENIES** Defendant's motion to dismiss under Rule 12(b)(1) and his alternative request for partial summary judgment under Rule 56 as moot.

The Court therefore turns to Defendant's remaining argument. Defendant seeks Rule 12(b)(6) dismissal of Plaintiff's third cause of action to the extent it is based upon his finding of sensitive documents on the MCC computer.

Title VII is the exclusive remedy for claims of employment discrimination by federal employees. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 829–35 (1976); *Taylor v. Geithner*, 703 F.3d 328, 333 (9th Cir. 2013). In addition to prohibiting discrimination, Title VII makes it unlawful for an employer to retaliate against an employee who "has opposed any unlawful employment practice, or has made a charge, testified, assisted, or participated in an employment discrimination investigation or proceeding." *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002) (first quoting *Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1558–59 (9th Cir. 1994); and then citing 42 U.S.C. § 2000e-3(a)). In the Ninth Circuit, a claim for retaliation requires a showing that Plaintiff "undertook a protected activity under Title VII, his employer subjected him to an

adverse employment action, and there is a causal link between those two events." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 693 (9th Cir. 2017) (citing *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 646 (9th Cir. 2003)).

Defendant does not attack the sufficiency of Plaintiff's pleading the first and third elements, and the Court finds that Plaintiff has met his burden. *See* Compl. at ¶ 67 (Plaintiff pleads that he engaged in a protected activity when he reported the alleged discrimination and filed an EEOC complaint); *see also id.* at ¶ 70 (Plaintiff asserts that his protected activities caused the alleged adverse employment actions). Instead, Defendant asserts that that "Plaintiff's 'sensitive documents' claim," is not an adverse employment action under the second element. Doc. No. 4 at 9.

Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006). "Only non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." *Id.* (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)). In the Ninth Circuit, an adverse employment action is any adverse treatment that "is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir. 2000); *see also Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004). Therefore, the Ninth Circuit's definition is broad and not limited to actions such as discharges, transfers, or demotions as Defendant seems to suggest. *See Lyons*, 307 F.3d at 1118. Instead, in the Title VII context, courts have found that far less serious actions were sufficient to deter a reasonable employee from engaging in protected speech. *See, e.g.*, *White*, 548 U.S. at 70–71 (concluding that a change in work assignment within the same job description would have deterred a reasonable employee from making a charge of discrimination); *Brooks*, 229 F.3d at 928–29 (noting that "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion" constitute adverse employment actions, whereas

"declining to hold a job open for an employee and badmouthing an employee outside the job reference context" do not); *see also Dahlia v. Rodriguez*, 735 F.3d 1060, 1079 (9th Cir. 2013) ("To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind. Nor does it matter whether an act of retaliation is in the form of the removal of a benefit or the imposition of a burden.").

Taking the facts in the Complaint as true, one month after Plaintiff filed his EEOC complaint, Defendant leaked, or otherwise did not protect, Plaintiff's sensitive information contained therein. *See* Compl. at ¶ 43. This information was easily accessible to all employees—including employees who had shown hostility and escalating violent behavior towards him. *See id.* At the dismissal stage, the Court finds it plausible that this action by itself would deter the reasonable employee from filing an EEOC complaint or otherwise speaking up about perceived discrimination.

Moreover, Plaintiff's sensitive documents allegation is not the only factual support for finding adverse employment action. Plaintiff asserts that he was subjected to a variety of adverse employment actions:

> Plaintiff was written up numerous times and given proposed 3-day suspensions. Because [he] initiated an EEOC Complaint and reported Mr. Rico's incitement of a work stoppage Plaintiff was issued a cease-and-desist letter and was given a proposed 3-day suspension. Further, Plaintiff's Light Duty Assignment was reassigned to his regular assignment while he was still under medical restrictions. After reporting that this assignment violated his medical restrictions, he was again involuntarily reassigned from the original position he had accepted. Plaintiff believes that his sensitive documents were accessible on [MCC]'s computer system as retaliation for his protected activities.

Compl. at ¶ 69. He asserts the write-ups, letters of reprimand, involuntary reassignments, and leaking of sensitive documents in their totality. Taking these activities in their totality, it is plausible that such conduct would dissuade a reasonable employee from airing their grievances in fear of such conduct. *See White*, 548 U.S. at 68.

Whether the sensitive documents allegation by itself, or taken in conjunction with the other alleged activities, constitutes a non-trivial adverse employment action is a matter of fact, which the Court will not decide at this stage.  *See, e.g.*, *Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1097 (S.D. Cal. 2020) (explaining that whether a factual allegation was an adverse employment action was a triable issue of fact).  It is sufficient that Plaintiff plausibly pleads that it is, as that is all he must do to survive dismissal.  Therefore, the Court concludes that Plaintiff sufficiently pleads a claim for retaliation under Rule 12(b)(6) and **DENIES** the remainder of Defendant's motion.[3]

---

[3] In a footnote, Defendant alternatively argues that the sensitive documents allegation additionally fails under Rule 12(b)(6) because Plaintiff "does not identify the documents[,] assert how they are 'sensitive,' or explain how he located the documents on the computer system." Doc. No. 4 at 11 n.3.  "Much like the Court does not expect to find 'elephants in mouseholes,' the Court does not expect to find dispositive arguments in footnotes." *Kamal v. Eden Creamery, LLC*, No. 18-cv-01298-BAS-AGS, 2019 U.S. Dist. LEXIS 107263, at *24 n.5 (S.D. Cal. June 26, 2019) (internal citation and certain quotation marks omitted) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)).  "A footnote is the wrong place for substantive arguments on the merits of a motion, particularly where such arguments provide independent bases for dismissing a claim not otherwise addressed in the motion." *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 935 n.1 (N.D. Cal. 2008).  Moreover, being well-under the district's page limit, *see* Civ. L. R. 5.1.a, Defendant could have easily incorporated this two-sentence footnote, and expanded upon it, in the main body of his brief.  *See Coe v. Gen. Mills*, No. 15-cv-05112-TEH, 2016 U.S. Dist. LEXIS 105769, at *18 n.3 (N.D. Cal. Aug. 10, 2016).  His failure to do so "signals that that the content is not of central importance."  BRYAN GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE 168 (3d ed. 2013).  Accordingly, the Court has the discretion to disregard it.  *See, e.g.*, *First Advantage*, 569 F. Supp. 2d at 935 n.1.  Nonetheless, the Court considers the argument and finds it unavailing.  *See Brooks v. Gomez*, No. C 10-01873 SBA, 2013 U.S. Dist. LEXIS 16976, at *36 (N.D. Cal. Feb. 5, 2013) ("The Court is not only concerned with the location of the argument but with the substance of the argument. The argument is conclusory and fails to demonstrate that dismissal is appropriate.").  Plaintiff alleges that the documents he discovered on an MCC computer included sensitive information about him contained in his EEOC complaint.  *See* Compl. at ¶ 43.  This is sufficient to put Defendant on notice of the nature of Plaintiff's claim.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion in its entirety.

**IT IS SO ORDERED.**

Dated: May 11, 2021

*[signature]*

HON. MICHAEL M. ANELLO
United States District Judge